LUTHER A. WRIGHT & others *vs.* HORATIO G. HERRICK,

Suffolk.    March 5. — July 30, 1878.

A., with the consent of B., did business in his name, and bought goods of C. and also of D., who both gave credit to B.  C. brought an action against B. and attached goods as his property.  Subsequently D. brought an action against A., doing busi- ness under the name of B., and attached the same goods.  C. was then allowed, without notice to D., to amend his writ by adding the name of A. as a defendant, and declaring against A. and B. as copartners doing business under the name of B Both C. and D. recovered judgments.  As between A. and B., the latter had no in terest in the attached goods.  *Held*, that the goods attached were first to be ap- plied in satisfaction of the execution obtained by C. on his judgment; and that the amendment was immaterial

TORT against the sheriff of Essex for the alleged wrong- ful act of his deputy.  At the trial in the Superior Court, before *Pitman*, J., without a jury, the following facts appeared:

The plaintiffs attached certain personal property, on a writ against William W. Phillips and Edward Martin, as copartners, doing business under the name of Henry Phillips, on March 24, 1875.  It was afterwards sold on mesne process, on a prior at- tachment, on a writ in favor of Edward Martin against Henry Phillips, which last named writ was never entered in court. The plaintiffs recovered judgment against William W. Phillips and Martin, in the Superior Court for the county of Suffolk at January term 1876, and placed the execution duly issued thereon in the hands of the defendant's deputy, and requested him to apply the proceeds of the personal property in satisfaction of the execution.  This he declined to do 'except in part, but first applied the same in satisfaction of an execution issued from the Police Court of Haverhill, on December 1, 1875, upon a judgment in favor of Matthew Plumstead, Jr., recovered on No- vember 15, 1875, against Henry Phillips, William W. Phillips and Martin, as copartners, doing business under the name of Henry Phillips.  Plumstead's writ was dated March 24, 1875, and commanded the officer to attach the property of Henry Phillips; and thereon, upon March 24, prior to the attachment in the suit of the plaintiffs against William W. Phillips and Martin, the deputy did attach the personal property as the property of Henry Phillips.  Subsequently, and before judg-

ment in the action, by leave of the Police Court, and without notice to the plaintiffs, Plumstead amended his writ and declaration by declaring against Henry Phillips, William W. Phillips and Martin, as copartners doing business under the name of Henry Phillips. William W. Phillips and Edward Martin carried on the grocery business and used the name of Henry Phillips, by his permission and consent, in making purchases, and the goods attached were so bought; and the debts of the plaintiffs and Plumstead, on which their judgments were obtained, were contracted in the name of Henry Phillips. Between the parties, Henry Phillips had no interest in the attached goods; but this was not known to Plumstead.

Upon these facts the defendant asked the judge to rule that Henry and William W. Phillips and Martin, as to third parties, were copartners; and that the deputy rightfully satisfied the execution of Plumstead before that of the plaintiffs; and that the plaintiffs were not entitled to recover in this action. The judge refused so to rule, and found for the plaintiffs; and the defendant alleged exceptions.

*J. P. Jones*, for the defendant.

*W. E. Jewell*, for the plaintiffs.

ENDICOTT, J. It appears from the bill of exceptions that the debts of the plaintiffs and Plumstead were contracted in the name of Henry Phillips, who had consented to the use of his name by William W. Phillips and Martin in making purchases. Both the plaintiffs and Plumstead trusted Henry Phillips, and the goods were sold on his credit. As to them, therefore, he was undoubtedly a partner, although as between himself and William W. Phillips and Martin he had no interest. He was the nominal and ostensible partner, and the use of his name rendered him liable both to the plaintiffs and to Plumstead. *Ex parte Watson*, 19 Ves. 459. In an action by the firm, the defendant could set off a separate debt due from Henry Phillips against the debt for which he was sued, the firm being conducted in the name of Henry Phillips only. Collyer on Part. (5th Am. ed.) § 763. *Stacey* v. *Decy*, 2 Esp. 469, note; *S. C.* 7 T. R. 361, note. A dormant partner need not join with the ostensible partner against a person who has dealt with the latter only; and it is at the option of a plaintiff to join the dormant partner as **a**

defendant, or not. *Wood* v. *O'Kelley*, 8 Cush. 406. *Ex parte Hamper*, 17 Ves. 403. Story on Part. §§ 241, 263. The action, therefore, brought by Plumstead against Henry Phillips could be maintained for the recovery of his debt, and an attachment of the property of the firm purchased in the name of Henry Phillips would be good against William W. Phillips and Martin, who had held him out as the ostensible partner and procured the goods upon his credit.

It was held in *Lord* v. *Baldwin*, 6 Pick. 348, that the creditor of an ostensible partner, who gave him credit as a single individual, was not to be postponed in his attachment upon the goods of the partnership to another creditor, who afterwards attached the same stock for a debt created upon the same credit, though he should have discovered a concealed partner, and set up his claim as a partnership creditor. And it was said by Chief Justice Parker that " all the creditors sold their goods or made their contracts with the ostensible, visible partner.· They trusted to him personally and to the goods upon which he was trading as his. The dormant partner is brought to light by *ex post facto* investigation, and he is made responsible, not because he was trusted, but because he secretly enjoyed the profits of the business." And again he says : " The question now is, whether, when all the creditors have trusted the man of business and apparent owner of the goods, any one of them, who is behind the rest in his attachment, shall supplant them and gain priority because he has discovered this concealed liability. At the time the debt was created, he stood upon the same footing with the rest; he trusted John Brown and the goods in his possession ; so did they. They have taken possession first of the fund which was held out to the public as the means of credit, and it might be, and probably was, in this very case, that the goods attached are the identical goods which they sold to the party sued. There would be then no pretence of equity, and we think not of law, in allowing a preference founded on no meritorious distinction or circumstances."

In that case several attachments were made in suits against John Brown alone, and a fourth attachment was made upon the same goods against John Brown and Aaron Brown as copartners. It was decided that they were copartners, and it was held that

this last attachment did not take precedence of the previous attachments. The only difference between that case and the case at bar is, that the creditors there dealt directly with John Brown and delivered the goods directly to him. In this case the plaintiffs and Plumstead dealt with Henry Phillips through William W. Phillips and Martin, and whether they regarded them as agents, or in what capacity, does not appear; nor does it appear that they knew that the goods were not delivered to Henry Phillips. As the case is presented, it is not to be distinguished from *Lord* v. *Baldwin*, above cited. See also *French* v. *Chase*, 6 Greenl. 166; 3 Kent. Com. (12th ed.) 65; Story on Part. § 241; Collyer on Part. §§ 822, 948. Plumstead, therefore, would have been entitled under his attachment, which was prior to that of the plaintiffs, to have had his execution satisfied before the plaintiffs, without an amendment of his writ. He lost no rights by amending his writ. The cause of action was not changed, and the amendment could properly be allowed. Gen. Sts. 129, § 41. No notice was necessary to the plaintiff, as he was not injuriously affected by it. *Tucker* v. *White*, 5 Allen, 322.

The defendant's deputy, therefore, properly applied the proceeds of the property attached to the satisfaction of Plumstead's execution, and the presiding judge erred in not ruling as requested. *Exceptions sustained.*